Learned, P. J.
This is an action for a divorce on the ground of adultery. The defendant d_enies the charge and alleges adultery committed by plaintiff. The issues were referred to a referee to hear and decide. He reported that the defendant had committed the adultery charged; and that plaintiff had not; and found that a judgment of divorce should be granted the plaintiff.
On a hearing .at special term, for judgment, that court held that no irregularity, fraud or collusion had been shown in *763 the proceeding, and granted judgment according to the report. But the court did not examine the merits. The defendant now appeals. She raised no other question than that on the whole evidence the judgment should not have been granted.
It may be said that the plaintiff’s case rest entirely upon the testimony of a woman, O. S., who was a servant in the family of the parties from May, 1883, to November 15, 1883. There are, however, some circumstances which will be mentioned that are claimed to corroborate her testimony.
The adultery is found by the referee to have been committed in October and November, 1883. On the 7th of October, 1883, defendant told plaintiff that he could have no breakfast, because he did not bring home any wood the night before; He said he would rather go without his breakfast than be quarreled to death, and went out. The defendant said if he went without his breakfast he would never come back. When he came back at night the house was locked. He did not return to his home after that.
It is not necessary to state in detail the testimony of this witness. If she is truthful there is no doubt of defendant’s guilt. •
All of her testimony as to the defendant’s guilt is contradicted by the testimony of Fowler, the alleged paramour. But he states that from the 4th of November, 1883, he began to stay at defendant’s house nights and continued to stay there until July, 1884; and that he gave up the room which he had elsewhere occupied January 1, 1884; that while thus staying at defendant’s house he occupied the room called hers, while she slept with her son, a boy. In the winter he had his washing and ironing done at her house. He paid nothing for his lodging. In January, 1884, the defendant wrote to the witness first-mentioned, expressing much grief and distress, asking why she left her' and saying: that she could not think “you were false to me and the trust I placed in you; ” asking her to come back •and stay; and saying: “I am still on the hill all alone except nights, when my dear friend comes and protects little George and myself through the night.”
It was admitted on the argument by counsel on each side that four days after the judgment of divorce and four days before the appeal therefrom, the plaintiff married the above mentioned principal witness for him on the trial.
That fact is urged as tending to show that she was influenced by a bad motive in testifying.
She, however, admitted on the trial her animosity towards the defendant, saying that it arose from defendant’s bad conduct. So that the feelings of the witness *764 were known to the referee and were probably considered in weighing her testimony.
We must take into account also, in estimating the weight of Fowler’s testimony, that very general feeling which induces men, at great sacrifices, to shield the reputation of women who have yielded to them. If animosity stimulated C. S., gratitude may have inspired Fowler. Therefore, any undisputed circumstances which indicate where the truth lies are very important.
The letter of defendant is noticeable. What is meant by saying that she does not think 0. S. is false to her and the trust placed in her? According to the testimony of C. S. the defendant repeatedly acknowledged her intercourse with Fowler and made C. S. a confidant. As she said in the letter: “Knowing how much confidence I placed in you.” What can all this refer to except to the matters as to which 0. S. testified?
Again, the defendant, after her husband had gone from the house, had Fowler stay there nights for some eight months, when (so far as can be gathered) there were no other occupants except herself and her son (of about fourteen years).
Fowler slept in her room, that is, the room called hers; but he says not with her. Now this is a circumstance undisputed, and it strongly corroborates the testimony of 0. S. Without some explanation which does not appear, it would be of itself very suspicious. And coming after the alleged matter of previous intercourse testified to by 0. S., it gives great probability to her testimony.
Further, it should be said that the testimony of 0. S. is not confined to admissions by the defendant, but it contains positive evidence of things seen and heard, which, aside from admission, would, if true, sustain the plaintiff’s case. Looking at the matter then in all its lights, and without reciting much detail of the evidence, we dó not see that it is a case in which we ought to reverse the referee’s findings. Certainly there is evidence on both sides as to defendant’s guilt. The referee saw the witnesses and could judge of their truthfulness. The plaintiff’s witness is corroborated by the two circumstances above stated. The defendant rests substantially upon Fowler’s denial. No reasonable excuse is given for her permitting him to stay in her house at night for so many months. If a protector were needed, one of her own sex could have been obtained.
The counter-claim of the defendant must be briefly considered. It presents a case of conflicting evidence where a just conclusion must depend largely on the character of the witnesses as developed on the trial.
*765 There is much that is disgraceful to witnesses and that cannot well be commented upon. It is enough to say that on examining the testimony we see no reason to reverse the referee’s findings on the point of the counter-charges made by the defendant.
The judgment should be affirmed, with costs.
Bookes and Landon, JJ., concur.